**In re the Marriage of Viola M. MARCH, Petitioner, Appellant,**

v.

**Jess A. MARCH, Respondent.**

**No. C7–88–1468.**

Court of Appeals of Minnesota.

Feb. 7, 1989.

Becky Skinner Toevs, Robin S. Landy, Larson & Lambert, Wayzata, for petitioner, appellant.

Thomas A. Roe, Thomas A. Roe Law Offices, Minneapolis, for respondent.

Considered and decided by FORSBERG, P.J., and CRIPPEN and NORTON, JJ., without oral argument.

## OPINION

FORSBERG, Judge.

Viola March appeals the trial court's division of real property, the valuation of a checking account, and the denial of attorney fees. Respondent Jess March cross-appeals challenging the division of personal property. We affirm.

## FACTS

Viola and Jess March married on March 12, 1942, and separated in May 1975 after almost 34 years of marriage. Viola began this dissolution action in May of 1986. At the time of trial, Viola was 63 years of age and Jess was 64 years of age; both were in poor health and unlikely to maintain gainful employment in the future.

After the separation, the parties agreed to refinance the homestead, which had no mortgage, and use the funds to purchase substitute housing. They took out a mortgage in the amount of $36,000 which amounted to 50% of the total appraised value ($72,000) of the homestead at that time. After the costs of closing the refinancing, Viola received the net sum of $32,737. She used $15,000 of the proceeds as a downpayment on her present condominium residence in New Hope, $3100 to pay some debts, and purchased airline tickets for the parties' children to fly home for Christmas from California. The remainder was used for her living expenses over the next ten years.

At the time Viola received the refinancing funds, the parties did not consult with an attorney, and they did not have a written agreement on the property division.

Although Jess resided in the Cedarwood Ridge homestead for a time after Viola moved to the condominium, he rented the home for a period to various individuals including family members. At the time of trial, Jess had resumed regular residence at the homestead.

The trial court found that at the time of trial the net equity in the condominium was $21,200 and awarded that to Viola. The net equity in the Cedarwood Ridge property was $47,830, which was awarded to Jess.

The trial court valued Jess's checking account at $530.16 on the date of trial. On June 3, 1986, one month after commencement of this action, the balance of the account was $9200. In July 1986, the balance was $2479.31, a decrease of $6720.69.

After the parties separated in 1975, Jess paid Viola the sum of $190 per week until March 1987. Under a June 5, 1987, temporary order of the trial court, Jess continued to pay $190 per week, and an additional $570 for three missed payments. In addition, Viola received $309 per month in Social Security benefits.

The trial court found that Viola has been economically dependent upon Jess since the parties' separation. She continues to be incapable of fully supporting herself, and she lacks sufficient property to provide for her reasonable needs. The trial court found Viola's necessary monthly living expenses are approximately $1800 and her total unsecured debt is $15,261.

Jess suffers from severe medical problems including emphysema and heart problems. Jess currently receives the net sum of $729 from Social Security. The trial court found Jess's necessary monthly expenses are approximately $1200 and his total unsecured debt is $7500.

The trial court awarded to Viola $210 as permanent spousal maintenance, the New Hope condominium, and one-half of Jess's pension benefits amounting to approximately $850 per month. The court awarded Jess the Cedarwood Ridge homestead and the other half of the pension benefits in the amount of $850. The court made a division of personal property and ordered that each party shall be responsible for their own attorney fees.

After both parties moved for an order amending the judgment and decree, the trial court entered amended findings on June 17, 1988, which corrected an oversight to include in Jess's award the balance of

his checking account and awarded the following division of personal property:

| | Viola | Jess |
|---|---|---|
| Metropolitan Life Insurance | 0.00 | |
| 1977 Plymouth Volare | 750.00 | |
| 1985 income tax refunds | 1896.00 | |
| 1986 income tax refunds | 2632.00 | |
| Cash payment to Viola from Jess | 6228.57 | |
| TOTAL | $11,506.57 | |
| IRA | | 4356.57 |
| Jess's 401K | | 3700.00 |
| 1974 Ford | | 150.00 |
| 1975 Lincoln | | 1800.00 |
| Honda 650 | | 800.00 |
| Honda 160 | | 200.00 |
| Trotwood Trailer | | 500.00 |
| Jess's Checking Account Balance | | 536.16 |
| Less cash payment to Viola | | −6228.57 |
| TOTAL | | $5808.16 |

Viola filed an appeal from the judgment and decree entered on April 13, 1988, and Jess filed a notice of review challenging the division of personal property.

## ISSUES

1. Did the trial court abuse its discretion in dividing real and personal property?

2. Did the trial court err in the valuation of the checking account?

3. Did the trial court abuse its discretion by denying Viola attorney fees?

## ANALYSIS

A trial court has broad discretion when dividing property, and will not be overruled if the division has a reasonable and acceptable basis in fact and principle. *DuBois v. DuBois,* 335 N.W.2d 503, 507 (Minn.1983). An equitable property distribution will be upheld, even though not necessarily equal. *Weikle v. Weikle,* 403 N.W.2d 682, 686 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. June 30, 1987).

### 1. The property division.

Under Minn.Stat. § 518.58 (1986), the trial court must "consider the contribution of each in the acquisition, preservation, depreciation or appreciation in the amount or value of the marital property." Also, it must be "conclusively presumed that each spouse made a substantial contribution to the acquisition of income and property while they were living together as husband and wife." *Id.* This presumption "does not apply to the period of time when the parties no longer lived together." *Batsell v. Batsell,* 410 N.W.2d 14, 17 (Minn.Ct.App. 1987), *pet. for rev. denied* (Minn. Sept. 30, 1987). The trial court must "make a just and equitable division of the marital property of the parties." Minn.Stat. § 518.58 (1986).

### a. Real property.

Viola claims the trial court's division of real property was an abuse of discretion. In awarding Viola the $21,200 equity in the condominium and Jess the $47,830 equity in the homestead, the trial court recognized the conclusive presumption of section 518.-58, but stated that the presumption does not apply "after the parties divided the equity and [Viola] moved from the home." Only Jess made contributions to the homestead after the parties divided the equity: he was responsible for the mortgage, insurance, taxes and maintenance costs.

Viola contends that the agreement was invalid because it was a ten year old, oral agreement made without benefit of counsel. The trial court did not rely on the agreement between the parties as the basis for its finding to support the unequal division of the real property. The court instead relied on the factors of section 518.-58, and this was not error.

Viola also contends the increased value of the homestead property was attributable to appreciation, and not the contribution of Jess. Even though the value of the property appreciated, Jess maintained and preserved the property. Viola made no contributions to the homestead during the period of the parties' separation.

### b. Personal property.

On his cross-appeal, Jess contends the personal property division was inequitable because the assets were attributable solely to his own efforts during separation. He petitioned the trial court to equalize the personal property award. The court only corrected the oversight of excluding the amount of the checking account bal-

ance, thus increasing the amount of the award to Jess, but it did not equalize the total amounts awarded to each of the parties. Considering the circumstances of the parties, this result is equitable.

2. Checking account.

Viola contends the trial court erred in valuing Jess's bank account as of the final trial date. She argues the proper date for the valuation was July 1986 when the account had a balance of $6720.49. In resolving this dispute, the trial court took into consideration the lack of any contribution by Viola to Jess's checking account, Jess's decreased income due to his retirement, and the length of the parties' separation during which time Viola regularly received spousal maintenance from Jess. The court determined the account's balance at $530.16, the amount in the account on the date of trial.

The assignment of a specific value to an asset is a finding of fact and will not be set aside unless it is clearly erroneous. *Gummow v. Gummow,* 375 N.W.2d 30, 35 (Minn.Ct.App.1985). If a party in a dissolution dissipates marital assets, "the party shall be accountable for that dissipation unless the assets are justifiably consumed to meet necessary living expenses of the parties." *Volesky v. Volesky,* 412 N.W.2d 750, 752 (Minn.Ct.App.1987). Moreover, the valuation of assets does not have to be precise, but it is only necessary that the value arrived at is within a reasonable range of figures. *Fick v. Fick,* 375 N.W.2d 870, 873–74 (Minn.Ct.App.1985). Jess used $1500 of the funds in his checking account to pay for the replacement of the roof on his house. The rest of the money went to pay for necessary living expenses including uninsured medical expenses and spousal maintenance payments. Jess did not "conceal, squander or misuse marital assets." *Volesky,* 412 N.W.2d at 753. Under these circumstances the valuation is not clearly erroneous.

3. Attorney fees.

Viola finally contends that the denial of attorney fees is error. Under Minn. Stat. § 518.14 (1986), the trial court "after

considering the financial resources of both parties, may require one party to pay a reasonable amount necessary to enable the other spouse to carry on or to contest the proceeding, and to pay attorney's fees." The denial of fees may be an abuse of discretion when there is a wide disparity in the financial resources of the parties. *Worden v. Worden,* 403 N.W.2d 909, 912 (Minn.Ct.App.1987). While there may be some disparity in the real property award, Jess's financial resources are no better than Viola's. Denial of attorney fees was not an abuse of discretion.

## DECISION

The trial court did not abuse its discretion in the real and personal property distribution, in the valuation of a checking account, and in denying an award of attorney fees.

AFFIRMED.

CRIPPEN, Judge, dissenting.

It is evident the trial court's exercise of discretion on the division of marital real estate is premised on the erroneous notion that other marital property was set aside for appellant eleven years before the dissolution proceedings began. It is undisputed, however, that a substantial portion of the funds set aside for appellant in 1975 were not a distribution of property but a funding of necessary marital expenses. Analyzed correctly, the marital real estate after events in 1975 included a $36,000 investment in a home and an investment of $15,800 in a condominium.

If the court awarded each party the appreciated value of the real estate they used since 1975, together with one-half the value of the 1975 marital property, appellant would be awarded marital real estate interests of $31,300, $10,100 more than awarded by the trial court. Because I conclude the failure to make such an award constitutes an abuse of discretion, I respectfully dissent.